# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### (FLORENCE  DIVISION)

| | | |
|---|---|---|
| JOANN FORD, | ) | CA: 4:21-cv-02307-RBH |
| | ) | |
| *Plaintiff(s)*, | ) | **DEFENDANT SANDHILLS** |
| | ) | **MEDICAL FOUNDATION INC.'S** |
| v. | ) | **MOTION TO SUBSTITUTE** |
| | ) | |
| SANDHILLS MEDICAL | ) | |
| FOUNDATION, INC. | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

Pursuant to 42 U.S.C. § 233(a) *et seq*., Defendant Sandhills Medical Foundation, Inc.

("Sandhills"), by and through its attorneys, moves to substitute the United States as the only proper

defendant in its place.[1] In support of its motion, Sandhills would demonstrate as follows:

## INTRODUCTION

As a deemed employee of the U.S. Public Health Service (PHS) under 42 U.S.C. § 233(g)

and (h), Sandhills is entitled to absolute immunity—and to substitution of the United States as the

only proper defendant—with respect to *any* civil action or proceeding arising out of its

performance of *medical or related functions* within the scope of its deemed federal employment.

*See* 42 U.S.C. § 233(a).[2]

---

[1] In accordance with the Court's February 23, 2022 Order and Local Rule 7.06, Sandhills conferred with government counsel and Plaintiff. Both oppose substitution.

[2] 42 U.S.C. § 233(a) provides:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28... for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

This is such an action. Plaintiff's claims arise out of "health or health-related functions performed by [Sandhills]," 42 U.S.C. § 233(h)(1), which are not only quintessential to Sandhills' provision of quality and integrated health care services but are statutorily mandated for all deemed health center entities and a condition of their deemed PHS status—*i.e.*, "to implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements, may result in disapproval of this deeming application." *See*, *e.g.*, Program Assistance Letter 2021-21, Calendar Year 2022 Requirements for Federal Tort Claims Act (FTCA) Coverage for Health Centers and Their Covered Individuals (Feb. 9, 2021), available at https://bphc.hrsa.gov/sites/default/files/bphc/ftca/pdf/pal-2021-01.pdf; 42 U.S.C. §§ 233(h)(1), § 254b(k)(3)(C). Plaintiff alleges Sandhills failed to provide this protection and was harmed as a result. As set forth in detail below, Sandhills' performance of these functions is intertwined with and inseparable from its role as a deemed health care provider.

## STATEMENT OF THE CASE

### A. Statutory Framework

Pursuant to the Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, § 4, 84 Stat. 1868, 1870-71 (1970), codified at 42 U.S.C. § 233, PHS personnel enjoy absolute immunity from any civil action or proceeding arising out of their performance of medical, surgical, dental or related functions within the scope of their employment. 42 U.S.C. § 233(a). Section 233(a) affords this immunity by making the remedy under the FTCA *exclusive* with respect to the covered conduct. *Id*.

By enacting 42 U.S.C. § 233(a), Congress intended to encourage the provision of medical services in underserved areas by shielding PHS personnel from personal liability and the burdens

of litigation arising out of their medical and related duties. *Robles v. Beaufort Memorial Hosp.*, 482 F.Supp.2d 700 (D.S.C. 2007) ("once the community health center is deemed a Public Health Service employee, it 'enjoys immunity from those acts that relate to its employment, and any actions against it are treated as actions against the United States'") (quoting *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 289 F.Supp.2d 392, 395 (S.D.N.Y. 2003)). Without such protection, the cost of professional liability insurance greatly hinders or even extinguishes access to care in these areas. *See* § 2, 84 Stat. 1868; H.R. Rep. No. 1662, 91st Cong., 2d Sess. 1 (1970); 116 Cong. Rec. 42,543 (1970) (Rep. Staggers, the House of Representatives sponsor, stating that PHS physicians "cannot afford to take out the customary liability insurance as most doctors do," "because of the low pay that so many of those who work in the [PHS] receive.").

To achieve its purpose, the grant of absolute immunity to PHS personnel under 42 U.S.C. § 233(a) is "broad" and "comprehensive." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (§ 233(a) immunity is broad enough to "easily accommodate both known and unknown causes of action"); *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000) ("there is nothing in the language of § 233(a) to support [the] conclusion" that "§ 233(a) provides immunity only from medical malpractice claims"); *Pomeroy v. United States*, No. 17-10211-DJC, 2018 WL 1093501 *3 (D.C. Mass. Feb. 27, 2018); *Logan v. St. Charles Health Council, Inc.*, No. 1:06-CV-00039, 2006 WL 1149214 at *2 (W.D. Va. May 1, 2006) (not reported) (declining to hold that the immunity granted by § 223(a) was limited to medical malpractice claims).

The Federally Supported Health Centers Assistance Act of 1992 (and as amended in 1995) (the "FSHCAA"), codified at 42 U.S.C. § 233(g) *et seq.*, authorizes the HHS Secretary to extend the same protection afforded by § 233(a) to certain federally-funded health centers and their officers, directors, and employees (and certain contractors). Pub. L. 102–501. 141 Cong. Rec.

3

H14273-07, 1995 WL 733808 (daily ed. Dec. 12, 1995) (addressing "concerns about the shortage of healthcare services available to . . . medically underserved areas"). That protection is a grant of "absolute immunity . . . for actions arising out of the performance of *medical* or *related functions within the scope of their employment* by barring all actions against them for such conduct." *Hui*, 559 U.S. at 806 (emphasis added).

To be deemed a PHS employee for purposes of § 233(a) immunity, the FSHCAA requires a health center grantee to submit an application "in such form and such manner as the Secretary shall prescribe." 42 U.S.C. § 233(g)(1)(D). The health center applicant must also demonstrate it meets four requirements listed in § 233(h), including a requirement to "implement[] appropriate policies and procedures to reduce the risk of malpractice *and the risk of lawsuits arising out of any health or health-related functions performed by the entity*." *Id*. at § 233(g)(1)(D) and (h) (emphasis added).

Upon receipt of the application, the Secretary must make a prompt deeming determination. *Id*. at 233(g)(1)(E) (1995). The application seeks § 233(a) immunity in advance of and for a specified period (*i.e.*, a calendar year). A favorable deeming determination by the Secretary (which confers immunity) is "final and binding" (42 U.S.C. § 233(g)(1)(D)-(F)) on HHS, the Attorney General, and "other parties to *any* civil action or proceeding." *Id*. at § 233(g)(1)(F) (emphasis added), with respect to the designated period.

When a civil action or proceeding is brought against a deemed PHS employee, the deemed entity or individual has a duty to deliver the pleadings to the grantor agency's designated representative, which is HHS's Office of General Counsel ("HHS OGC"). 42 U.S.C. § 233(b); https://bphc.hrsa.gov/sites/default/files/bphc/ftca/pdf/ftcahcpolicymanualpdf.pdf at p. 25 (calling for health centers to deliver pleadings to HHS OGC); *McLaurin v. United States*, 392 F.3d 774,

779-80 (5th Cir. 2004) (recognizing deemed PHS employee must deliver pleadings to supervising federal agency).

HHS OGC is required, in turn, to "promptly" deliver copies of the pleadings to the Attorney General and appropriate local United States Attorney. 42 U.S.C. § 233(b). Upon notification of a state court action against a deemed PHS employee (confirmed by a Notice of Deeming Action), the Attorney General has a mandatory (non-discretionary) duty to appear in that court within 15 days of notice of the lawsuit to report whether the "Secretary has determined under subsections (g) and (h) of [Section 233], that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id*. at § 233(*l*)(1). The HHS Secretary's report to the state or local court of that deeming determination satisfies "the provisions of [42 U.S.C. § 233(c)] that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility." *Id*. at § 233(*l*)(1); *Cf*. 28 U.S.C. § 2679(d)(3).

If, however, the Attorney General (or his or her authorized representative) fails to appear in the state court action or proceeding within the proscribed period, the deemed entity or individual has an absolute right to remove the matter to the appropriate federal district court, without any time limit for doing so. *Id*. at § 233(*l*)(2). Section 233(*l*)(2) is in substance and effect an officer removal statute, which supplies a removal right in addition to the general officer removal statute at 28 U.S.C. § 1442(a)(1). *See also Agyin v. Razman*, 986 F.3d 168, 178 (2d Cir. 2021) (concluding that deemed PHS physician's removal under § 1442 was proper because, as an

employee of a deemed health center, he was acting under a federal officer when he treated the plaintiff).

Upon removal under § 233(*l*)(2), the proceedings (on the merits) are stayed, by operation of law, until the federal district court conducts a "hearing" to determine the proper forum or procedure, and issues an order consistent with its determination. 42 U.S.C. § 233(*l*)(2).

The hearing in federal district court following § 233(*l*)(2) removal allows a deemed entity or individual to challenge the federal government's failure or refusal to "determine[] under subsections (g) and (h) of [§ 233], that such entity [or] employee … is deemed to be an employee of the [PHS] for purposes of [§ 233] with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id*. at § 233(*l*)(1). Where, as here, the claim is covered by the deemed defendant's § 233(a) immunity, § 233(*l*)(2) ensures that the United States is substituted as the only proper defendant in his or her (or its) place. *El Rio Santa Cruz*, 396 F.3d at 1272; *see also Booker*, 10 F.Supp.3d at 656; *see also Kezer v. Penobscot Cmty Health Ctr.*, 15-cv-225-JAW, 2019 BL 141566 at *9 (D. Me. Mar. 21, 2019) (ECF 15-1).

### B.  Factual and Procedural Background

Sandhills, a South Carolina-based nonprofit organization, receives federal grant funds under Section 330 of the PHS Act (codified at 42 U.S.C. § 254b *et seq*.). Under this federal grant, Sandhills operates a community-based health center that provides health care services to medically underserved residents of various South Carolina counties. *See* 42 U.S.C. § 254b(a), (b), (j), (k).

For the years 2019, 2020, and 2021, the HHS Secretary deemed Sandhills a PHS employee for purposes of § 233(a) immunity. *See* ECF Nos. 1-2 (HHS "Notice of Deeming Action" confirming Sandhills' deemed status for CY 2019, 2020, and 2021). As a deemed PHS employee, Sandhills acts under the Health Services and Resources Administration (HRSA), to support the

mission of the actual PHS by performing medical and related functions that would otherwise fall within PHS purview. 42 U.S.C. § 254b(o) (HHS Secretary administers the Section 330 Health Center program through HRSA). This includes the maintenance and management of patients' protected health and identifying information.

In June 2021, Plaintiff, a South Carolina citizen, filed a civil action against Sandhills in the Court of Common Pleas for Chesterfield County, South Carolina. In the complaint, styled as a nationwide class action, Plaintiff alleges that she was a patient of Sandhills during the complaint's operative timeframe and that Sandhills failed to safeguard Personally Identifying Information and Protected Health Information (referred to, respectively, as "PII" or "PHI" collectively, as "PII/PHI") that it obtained from her in "approximately 2018 to 2019." *See* ECF No. 1-1 (Compl. at ¶¶ 1, 51, 78-79, 85, 113-14).

Plaintiff defined the putative class as "[a]ll individuals residing in the United States whose PII or PHI was exposed to an unauthorized party." *See id*. at ¶¶ 61-62, 102, 129, 138).

The core allegations of the complaint are as follows:

(a) Plaintiff and putative class members, as current or former patients of Sandhills, relied on Sandhills to keep their PII/PHI confidential and securely maintained, to use this information for official purposes only, and to make only authorized disclosures of this information. ECF No. 1-1 (Compl. ¶ 21);

(b) Sandhills had a duty to adopt reasonable measures to protect plaintiff's and the putative class members' PII/PHI from involuntary disclosure to third parties. *Id*. at ¶ 22.

(c) Sandhills did not implement or use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining

for plaintiff and the putative class members, causing their PII/PHI to be exposed and subject to unauthorized use. *Id*. at ¶ 27.

By definition, each and every putative class member is a current or former medical patient of Sandhills, and derived standing by virtue of this patient-provider relationship. Plaintiff's allegations are couched in terms of a health care professional's nonfeasance, misfeasance, or malpractice in performing duties inherent in, and integral to, Sandhills' medical functions—*i.e.* a failure to appropriately safeguard a patient's protected health and personally identifying information. *See i.d.* at ¶¶ 77-144.

On July 7, 2021, Sandhills accepted service of plaintiff's summons and complaint, *see* ECF No. 1-3 (acceptance of service), and delivered the pleadings to HHS the following day (July 8). *See* ECF No. 1-4 (notification through HHS OGC's designated email address)).

Although not required, Sandhills provided courtesy copies of the complaint to the U.S. Attorney for the District of South Carolina on July 9, 2021. 42 U.S.C. § 233(b) (providing that designated agency representative, not the individual federal defendant, "shall promptly furnish copies of the pleading and process therein to the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the Secretary"). ECF 1-5 (notice to U.S. Attorney for the District of South Carolina).

On July 26, 2021, Sandhills removed the action to this Court pursuant to officer removal statutes, 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442, among other grounds. *See* ECF No. 1 (Notice of Removal and Supporting Exhibits).

In a letter dated August 12, 2021, the United States (acting through the HHS OGC) denied Sandhills' request for substitution/immunity in this case. In its letter, the United States mistakenly argues that § 233(a) immunity extends "solely" to "medical malpractice cases" and that plaintiff's

complaint "does not appear to assert a medical malpractice claim." A copy of the denial letter is attached hereto as **Exhibit A**.

Neither Plaintiff nor the United States filed a motion to remand or otherwise raised any procedural or jurisdictional objection to this removal action. 28 U.S.C. § 1446 (procedural objections not raised within 30 days of removal are waived). Instead, on October 11, 2021, Plaintiff filed a motion for a status conference to address the proceedings contemplated by 42 U.S.C. § 233(*l*)(2). *See* ECF No. 11. In response, Sandhills consented, noting only that the United States is the real party in interest. *See* ECF No. 12 (Response to Motion for Status Conference, *citing*, *e.g.*, *Estate of Booker v. Greater Philadelphia Health Action, Inc.*, 10 F.Supp.3d 656, 658, 651 (E.D. Pa. 2014)).

On November 9, 2021, the Court rendered the requested status conference "unnecessary" with an order: (a) stating that the "determination the Court is required to make is whether to substitute the United States as a party and deem the action as one brought under the Federal Tort Claims Act ("FTCA")," and (b) directing the parties to "submit briefs no later than December 6, 2021, addressing whether the United States should be substituted as a party defendant and this action deemed as one brought under the FTCA." (*See* ECF No. 13). The Court further indicated that it "will set a hearing under 42 U.S.C. § 233(*l*)(2) shortly after the briefs are filed." *Id*.

Sandhills submitted its brief on December 6, 2021. *See* ECF No. 15. Plaintiff submitted her brief the following day, December 7, 2021. *See* ECF No. 16.

On February 23, 2022, the Court issued a minute order indicating that Sandhills' argument for substitution (in its removal petition and subsequent brief) ought to be presented as a formal motion to substitute by March 1, 2022. *See* ECF No. 20 (Minute Order). The Order gives the

9

United States until March 11, 2022 to file a response or statement of interest, and allows Plaintiff to file a response within ten days of the government's submission. *Id*.

## ARGUMENT

Where, as here, a health center defendant is a deemed PHS employee for the relevant period and a claim alleges that the employee performed or failed to perform "medical, surgical, dental or *related functions*" (emphasis added) within the scope of its federal employment/project, § 233(a) immunity bars any civil action or proceeding against the health center resulting from such conduct. Instead, the damages remedy under the FTCA is exclusive ("of *any other* civil action or proceeding by reason of the same subject-matter against the [PHS employee] whose act or omission gave rise to the claim"). 42 U.S.C. § 233(a), (g).

The United States does not dispute Sandhills' deemed PHS status for the relevant period. Nor does it dispute that this action resulted from Sandhills' alleged performance of medical or related functions within the scope of its federal grant project (under 42 U.S.C. § 254b). Instead, the government asserts that Sandhills was deemed a PHS employee "solely in medical malpractice cases" and that plaintiff's complaint "does not appear to assert a medical malpractice claim." *See* Exh. A. The United States is incorrect in both regards.

In a clear and unequivocal directive, the FSHCAA extends to deemed health centers (such as Sandhills) "the same" protection as § 233(a) provides actual PHS employees. 42 U.S.C. § 233(g)(1)(A) ("The remedy against the United States for [a deemed entity or individual] shall be exclusive of any other civil action or proceeding to the same extent as the remedy against the United States is exclusive pursuant to subsection (a)."). Moreover, nothing in the language of § 233(a) limits the scope of immunity to medical malpractice or negligence actions only.

### A. Sandhills is a deemed PHS employee for the relevant time period

Pursuant to 42 U.S.C. §§ 233(g) and (h), the HHS Secretary has, for many consecutive years, deemed Sandhills to be a PHS employee with respect to its performance of medical and related functions undertaken within the scope of its deemed federal employment (project). Of particular relevance here, the HHS Secretary deemed Sandhills to be a PHS employee for the period in which the events giving rise to this civil action occurred. *See* ECF 1-2 (Notice of Deeming Action for calendar years 2019, 2020, and 2021); ECF 1-1 (Complaint alleges Sandhills' failures to properly safeguard PI/PHI resulted in data-breach in or around the year 2020).

### B. Plaintiff's action resulted from Sandhills' performance of medical or related functions within the meaning of § 233(a)

The allegations in Plaintiff's complaint clearly implicate Sandhills' "performance of medical … or related functions" within the scope of its deemed federal employment. 42 U.S.C. §§ 233(a), 254(b).

As an initial matter, Plaintiff explicitly asserts that her claims, and those of the putative class, arise out of the patient-provider relationship. *See* ECF 1-1 (Compl. ¶¶ 3, 7, 8, 51, 83, 85, 99, 113, 114, 121, 125, 134). Comprising several theories of professional malpractice or malfeasance (*i.e.*, negligence, breach of implied contract, invasion of privacy, and breach of confidence), the core allegation of Plaintiff's complaint is that Sandhills breached a duty, arising out of the patient-provider relationship, to maintain the confidentiality of patient PII/PHI and, as a direct result, caused personal injuries to plaintiff (and other similarly situated patients of Sandhills). *See* ECF 1-1 (Compl. At ¶¶ 10, 21, 22, 27, 29, 57, 59, 109).

Maintaining the confidentiality of patient PII/PHI is undoubtedly a "medical … or related function" within the meaning of 42 U.S.C. § 233(a). The statute that governs the health center program, and makes a health center grantee (such as Sandhills) eligible for deemed status in the first place, 42 U.S.C. § 233(g)(4) (referring to an "entity receiving Federal funds under section

254b of this title"), requires the health center to have, among other things, "an ongoing quality improvement system that includes clinical services and management, and that *maintains the confidentiality of patient records*." 42 U.S.C. § 254b(b)(1)–(2), (k)(3)(C) (emphasis added).

This statutory requirement is reinforced by the Health Center program's implementing regulations, which provide in pertinent part as follows:

> All information as to personal facts and circumstances obtained by the [health center] project staff about recipients of services shall be held confidential, and shall not be divulged without the individual's consent except as may be required by law or as may be necessary to provide service to the individual or to provide for medical audits by the Secretary or his designee **with appropriate safeguards for confidentiality of patient records**. Otherwise, information may be disclosed only in summary, statistical, or other form which does not identify particular individuals.

42 C.F.R. § 51c.110 ("Confidentiality") (emphasis added).

Moreover, each and every time a health center applies for deemed PHS status, it must attest that it "has implemented systems and procedures for protecting the confidentiality of patient information and *safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements*." *See*, *e.g.*, Program Assistance Letter 2021-21, Calendar Year 2022 Requirements for Federal Tort Claims Act (FTCA) Coverage for Health Centers and Their Covered Individuals (Feb. 9, 2021), available at https://bphc.hrsa.gov/sites/default/files/bphc/ftca/pdf/pal-2021-01.pdf (emphasis added). The reason for the attestation is that the HHS Secretary "may not approve an application under subsection (g)(1)(D)"—for purposes of § 233(a) immunity—unless the health center entity has, among other things, "implemented appropriate policies and procedures to reduce the risk of malpractice *and the risk of lawsuits arising out of any health or health-related functions performed by the entity*." 42 U.S.C. § 233(h)(1) (emphasis added).

12

As the complaint expressly acknowledges, there is an inextricable connection between a health center's provision of health care services and its duty to maintain and safeguard the confidentiality of patient information. *See* ECF No. 1-1 (Compl. at ¶ 29) ("As a *condition of its relationships with Plaintiff and Class Members*, Defendant required that Plaintiff and Class Members entrust Defendant with highly confidential PII and PHI.") (emphasis added). The complaint alleges the breach of this legal duty. In other words, Plaintiff's lawsuit arises out of "health or health related functions." (42 U.S.C. § 233(h)(1)).  Because the claim "resulted from the performance of medical … or related functions" within the scope of, and "related to [Sandhills'] grant supported activity," Sandhills is immune from this suit and Plaintiff's exclusive remedy is a claim against the United States under the FTCA. *See* 42 U.S.C. § 233(a) (remedy against United States provided by FTCA "shall be exclusive of any other civil action or proceeding."); *see* 42 C.F.R. § 6.6(d) ("acts and omissions *related to the grant supported activity of entities* are covered" (emphasis added).

A number of courts have been called upon to decide whether certain acts or omissions in maintaining confidential patient information are "medical … or related functions" within the meaning of § 233(a). In *Kezer v. Penobscot Cmty Health Ctr.*, the District Court for the District of Maine determined that deemed defendants performed a "related function" when they accessed the plaintiff's confidential mental health records in conducting quality assurance/improvement audits. *Kezer v. Penobscot Cmty. Health Ctr.*, No. 15-cv-225, 2019 BL 141566 at *8 (D. Me. Mar. 21, 2019) ("[T]he performance of quality improvement and quality assurance activities . . . are patently related to the provision of medical services. Indeed, the whole point is to review the quality of previously rendered services to improve the quality of future services.").

The *Kezer* court reviewed and discussed several cases in which various operational functions were found to constitute "related functions" within the ambit of § 233(a). *See*, *e.g.*, *Brignac v. United States*, 239 F.Supp.3d 1367, 1377 (N.D. Ga. 2017) (concluding "hiring and retention of . . . physicians is directly connected to [the] provision of medical care"); *De La Cruz v. Graber*, No. 16-cv-1294, 2017 WL 4277129 at *3–4 (C.D. Cal. June 15, 2017), report and recommendation adopted, 2017 WL 4271122 (C.D. Cal. Sept. 21, 2017) (concluding medical administrator, whose performance of administrative duties gave rise to constitutional tort claim, was immune under § 233(a)); *Teresa T. v. Regaglia*, 154 F. Supp. 2d 290, 300 (D. Conn. 2001) (concluding physician's decision to report or withhold reporting of suspected child abuse is a "related function to the doctor's performance of medical services"); *C. K. v. United States*, No. 19-cv-2492, 2020 WL 6684921 (S.D. Ca. Nov. 12, 2020) (Robertson, J.) (concluding that health center's chief medical officer's alleged failure to report and cover up of subordinate physician's sexual abuse of a patient resulted from the CMO's "medical . . . or related functions" for purposes of Section 233(a)); *see also Mele v. Hill Health Center*, No. 3:06-cv-00455, 2008 WL 160226, at * 3 (D. Conn. Jan. 8, 2008) (concluding that claim resulting from improper disclosure of medical information "concern[ed] the medical functions of providing treatment and the related function of ensuring the privacy of patient medical information," and was "covered by section 233(a)" immunity); *Pomeroy*, 2018 WL 1093501, at *3–4 (rejecting government position that "food services" or the "negligent provision of food" is not a medical or related function and concluding deemed health center's execution of treatment plan qualified as "related function" under § 233(a) when nurse, contrary to plan, provided solid food to patient with known swallowing disability); *Z.B. v. Ammonoosuc Cmnty Health Services*, 2004 WL 1571988, *3 (D. Me. June 13, 2004) ( "[N]othing in the language of section 233 requires that the damages claimed result from events

related only to the performance of medical functions for the named plaintiff"); *C.K. v. United States*, No. 19-2492, 2020 WL 6684921 *5-6 (S.D. Ca. Nov. 12, 2020) (Robertson, J.) (concluding that deemed health center's chief medical officer's alleged failure to report and cover up of subordinate physician's sexual abuse of a patient resulted from the CMO's "medical . . . or related functions" for purposes of § 233(a)).

### C. Section 233(a) immunity is not limited to medical malpractice or negligence actions

By virtue of its deemed federal status—which is indisputable and irrevocable as a matter of law, 42 U.S.C. § 233(g)(1)(F) (deemed status is "final and binding")—Sandhills is entitled to "the same" (42 U.S.C. § 233(g)(1)(A)) protection that § 233(a) provides actual PHS employees. *Compare* 42 U.S.C. § 233(a) (the remedy against United States under the FTCA—for the covered conduct of *actual* PHS employees—"shall be exclusive of any other civil action or proceeding") *with* 42 U.S.C. § 233(g)(1)(A) ("[t]he remedy against the United States for [the covered conduct of *deemed* PHS employees] shall be exclusive of any other civil action or proceeding to *the same* extent as the remedy against the United States is exclusive pursuant to subsection (a)"); *see also Agyin*, 986 F.3d at 177 (concluding deemed PHS physician "received from the federal government a delegation of the same legal immunity that is extended to employees of the Public Health Service"). The FSHCAA mandated this equivalency from its inception in 1992. Pub. L. 102–501 (1992). The 1995 amendments, which made the program permanent, made several "*procedural modifications*"—for the benefit of deemed PHS employees—"to improve the efficiency of the operation of the program." H.R. Rep. 104-398, H.R. Rep. No. 398, at 4–5 (emphasis added)

(indicating Congress' intent that deemed PHS employees "be covered for malpractice claims under the FTCA in the same manner as are employees of the [PHS]").[3]

Nothing in the "broad" language of § 233(a) limits the scope of its "comprehensive" immunity to medical malpractice or negligence actions. *Hui*, 559 U.S. at 806. In *Hui v. Castaneda*, the Supreme Court squarely confronted the scope of § 233(a) immunity and unanimously concluded that it bars all actions or proceedings against PHS employees arising out of their performance of medical or related functions, regardless of whether the claim is ultimately viable or compensable under the FTCA. *Id.*, 559 U.S. at 805. In reaching its decision, the Court looked to "[t]he breadth of the words 'exclusive' and 'any,'" as well as "the provision's inclusive reference to all civil proceedings arising out of 'the same subject-matter.'" *Id.* (construing § 233(a)). Given this language, the Court had no trouble finding the language expressly captures "any" civil action or proceeding alleging professional misfeasance or dereliction arising out of the performance of medical or related functions. *See id.* at 800 (concluding § 233(a) immunity extends to constitutional claims arising from the provision of medical care or related functions). Indeed, the Court noted that § 233(a)'s expansive language "easily accommodates both known and unknown causes of action" premised on qualifying acts and omissions. *Id.* at 806 (concluding that § 233(a) immunity applies to Bivens claims, even though statute's enactment predates Supreme Court's *Bivens* decision) (emphasis added).[4]

---

[3] The government's assertion (Exh. A) that Sandhills' deemed status affords a protection against "malpractice actions" only, if accepted, would affect a repeal by implication of § 233(g)(1)(A)'s mandated equivalency. *Cf. Hui*, 559 U.S. at 810 (§ 233(a) immunity protects PHS employees from *any civil proceedings* arising out of covered conduct) ("repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest") (*quoting Hawaii v. Office of Hawaiian Affairs*, 556 U.S. 163 (2009)).

[4] Contrary to its coverage decision here, the United States (as an amicus) successfully urged the Supreme Court in *Hui* to broadly construe § 233(a) immunity. Indeed, the United States argued that § 233(a) "does not refer solely to actions based on the common law or sounding in negligence"

Several courts have rejected the contention that § 233(a) is limited to medical malpractice claims. *Teresa T. v. Ragaglia*, 154 F.Supp.2d 290, 299-300 (D.Conn. 2001) ("…the immunity provided to employees of the [PHS] is not limited to claims for medical malpractice" or medical negligence) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000); *Mele v. Hill Health Ctr.*, No. 3:06cv455, 2008 WL 160226, at *3 (D. Conn. January 8, 2008) ("Although section 233(a) primarily provides immunity for individual PHS employees from medical malpractice claims, it also provides immunity for other claims.") (citing *Cuoco*, 222 F.3d at 108); *see also Pinzon v. Mendocino Coast Clinics Inc.*, Case No. 14–cv–05504–JST, 2015 WL 4967257 at *1-3 (N.D. Ca. 2015 Aug. 20, 2015) (granting, over objection, motion by United States to substitute itself in place of deemed health center defendant in civil action asserting claims for, among other things, violation of "the Americans with Disabilities Act," "Civil Rights Act of 1964," and "Health Insurance Portability and Accountability Act of 1996") (citing *Hui*)).

In *Pomeroy*, the United States invoked the pre-*Hui* case of *Mendez v. Belton*, 739 F.2d 15 (1st Cir. 1984)[5] "for the proposition that, at least in the First Circuit, Section 233(a) is limited to claims that sound in medical malpractice." 2018 WL 1093501 *3. *Mendez* is either inapposite or overruled by *Hui*. The *Mendez* Court held that § 233(a) immunity did not apply to a claim against a PHS physician who allegedly engaged in acts of race and sex discrimination in private hospital's peer review process, stating that § 233(a) "protects Public Health Service officers or employees

---

and stressed that "[t]he term 'malpractice,' in particular, refers not to a specific type of legal theory or claim, but rather to underlying conduct—*i.e.*, the professional misfeasance that may give rise to a cause of action." U.S. Amicus Curiae Br., 2009 WL 4759119 (U.S.), at *12–13 (U.S. 2009) (citing Webster's Third New International Dictionary 1368 (1993) ("malpractice" is "a dereliction from professional duty whether intentional, criminal, or merely negligent by one rendering professional services that results in injury").

[5] Although *Hui* did not cite *Mendez*, it is noteworthy that *Hui* resolved a circuit split in favor of the *Cuoco* decision. 559 U.S. at 805.

from suits that sound in medical malpractice." *Mendez*, 739 F.2d at 19. The *Pomeroy* court (and subsequent others in the First Circuit) later rejected the "sweeping effect" the government attributed to *Mendez*. *Pomeroy*, 2018 WL 1093501 *3 ("[T]he Second Circuit [in *Cuoco*] construed *Mendez*'s holding narrowly" on the basis that *Mendez* was focused on an employment relationship between two physicians, which "had nothing to do with the 'performance of medical ... or related functions.'") (citing *Cuoco*, 222 F.3d at 108); *see also Kezer v. Penobscot Cmty Health Ctr.*, 2019 BL 141566 at *8. (ECF 15-1) (rejecting the United States' argument that "[s]ection 233(a) immunity applies only to 'medical malpractice' claims against medical providers involving improper medical treatment"). In essence, by stating that § 233(a) protects PHS personnel "from suits that sound in medical malpractice," which is technically correct, the *Mendez* court was not saying that this immunity extends only to those claims that result from direct medical treatment. *Kezer, supra.*

In any event, Plaintiff's civil action here easily falls within the scope of § 233(a) immunity. The gravamen of the complaint is that Sandhills breached duties owed to Plaintiff, as a former patient of Sandhills, by allegedly failing to maintain and otherwise safeguard the confidentiality of her personally identifiable and protected health information, which resulted in personal harm. *See* ECF No. 1-1 (Complaint). Because the alleged conduct is a "medical … or related function" within the meaning of § 233(a), Sandhills is immune from the resulting civil action, regardless of the label the plaintiff attaches to it or category of civil actions in which it sounds (e.g., tort, malpractice, contract, equity).

Even though § 233(a) immunity is not limited to malpractice claims, it is worth noting that Plaintiff's claim arguably sounds in tort, if not medical malpractice under the law of the place (South Carolina)—"which is another reason why it is covered under § 233(a)." *Brignac*, 239

18

F.Supp.3d at 1378. South Carolina has long recognized the common law tort claim for a "physician's breach of the duty to *maintain the confidences of his or her patients* in the absence of a compelling public interest or other justification for the disclosure." *McCormick v. England*, 328 S.C. 627, 494 S.E.2d 431 (Ct. App. 1997) (emphasis added) (recognizing other jurisdictions have "relied on various theories for the cause of action, including invasion of privacy, breach of implied contract, medical malpractice, and breach of a fiduciary duty . . ."); *see also* S.C. Code §15-79-110 (defining "medical malpractice" broadly to "mean[] doing that which the reasonably prudent health care provider or health care institution would not do or not doing that which the reasonably prudent health care provider or health care institution would do in the same or similar circumstances").

The grant of absolute immunity under § 233(a) hinges on the substance of the PHS employee's conduct, not the label applied to a plaintiff's claim. To find otherwise would allow a plaintiff, in some cases, to sidestep and defeat the purpose of § 233(a) immunity "through 'artful pleading.'" *Campbell v. S. Jersey Medical Ctr.*, 732 Fed.Appx. 113, 116 (3d Cir. May 1, 2018).

## Conclusion

The material facts of this threshold immunity determination are not in dispute. *Campbell v. S. Jersey Medical Ctr.*, 732 Fed.Appx. 113, 118 (3d Cir. May 1, 2018) ("Not all hearings [under § 233(*l*)(2)] require the presentation of live testimony or evidence, particularly when the relevant facts are undisputed"). Sandhills' deemed status is confirmed, as a matter of law and fact, through official documents from HHS (*See* ECF 1-2). Moreover, maintaining and safeguarding personal and confidential patient information is a medical or related function as a matter of law. Should a dispute a genuine dispute of fact arise, however, Sandhills reserves the right to confront and submit additional evidence and argument at a hearing under § 233(*l*)(2).

19

For the forgoing reasons and those previously stated, the Court should, after conducting the hearing contemplated by 42 U.S.C. § 233(*l*)(2), issue an order substituting the United States as the only proper defendant in place of Sandhills in the above-captioned action.

Dated: March 1, 2022

Respectfully submitted,

By: /s/ *Michael D. Wright*

Vincent A. Sheheen (Fed I.D. No. 7016)
Michael D. Wright (Fed I.D. No. 11452)
SAVAGE, ROYALL & SHEHEEN, L.L.P.
P.O. Drawer 10
Camden, S.C. 29021
Telephone: (803) 432-4391
Facsimile: (803) 425-4812
vsheheen@thesavagefirm.com
mwright@thesavagefirm.com

J. Preston Strom, Jr. (Fed.Id. No. 4354)
Jessica L. Fickling (Fed.Id No. 11403)
STROM LAW FIRM, LLC
6923 N. Trenholm Road, Suite 200
Columbia, SC 29206
Telephone: (803) 252-4800
Facsimile: (803) 252-4801
petestrom@stromlaw.com
jfickling@stromlaw.com

Matthew S. Freedus
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, N.W., 4th Floor Washington, DC 20036
Telephone: (202) 466-8960
Facsimile: (202) 293-8103
mfreedus@ftlf.com

*Attorneys for Defendant Sandhills Medical Foundation, Inc.*

**CERTIFICATE OF SERVICE**

On March 1, 2022, I certify that I electronically filed the foregoing with the clerk of the

Court for the United States District Court for the District of South Carolina by using the CM/ECF

system. I also certify that I sent the forgoing by First Class mail and Email to:

James Leventis, Esquire
Chief, Civil Division
Sheria Clarke, Esquire
United States Attorney's Office
District of South Carolina
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Telephone: (803) 343-3172
James.leventis@usdoj.gov
Sheria.Clarke@usdoj.gov

/s/ *Michael D. Wright*

21