IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JoAnn Ford, on behalf of herself and all others similarly situated, | Case No. 4:21-cv-02307-SAL |
| Plaintiff, | |
| v. | **ORDER** |
| Sandhills Medical Foundation, Inc. | |
| Defendant. | |

This matter is before the court on defendant Sandhills Medical Foundation, Inc.'s ("Sandhills") motion to dismiss, ECF No. 55.

## BACKGROUND

Sandhills Medical Foundation, Inc. is a public nonprofit health center that receives federal funding to provide primary healthcare and related services to medically underserved communities in South Carolina. *See Ford v. Sandhills Medical Foundation, Inc.*, 97 F.4th 252, 254 (4th Cir. 2024). Sandhills has eight locations throughout South Carolina, including a facility in Lugoff, South Carolina. [*See* ECF No. 1-1. Compl. ¶¶ 2, 51.] JoAnn Ford was a patient at the Lugoff facility from 2018 to 2019. *Id.* ¶ 51. Sandhills obtained and collected Ford's personally identifiable information, including, but not limited to, her name, date of birth, mailing and email address, driver's license, and state identification card (collectively, "PII") and certain protected health information (collectively, "PHI"), and stored that information on a third-party vendor's online storage data platform. *Id.* ¶¶ 1, 4, 28–29. Though Ford does not identify the vendor in her complaint, the parties identified the vendor as Netgain Technology, Inc. ("Netgain") in subsequent briefing.

1

Sometime between September 23, 2020, and December 3, 2020, unidentified hackers breached Netgain's platform, taking Sandhills' data, including Social Security numbers (the "Data Breach"). *Id.* ¶ 23. The vendor later paid a ransom for the return of the data, and the hackers deleted and did not keep copies of the data. *Id.* Sandhills learned of the breach in January 2021 and, a few months later, announced the breach and filed a sample "Notice of Data Breach" with the Attorney General of Maine. *Id.* ¶¶ 4, 23. According to Sandhills, the vendor's cybersecurity experts monitored the internet but did not find any evidence suggesting the hackers attempted to sell the compromised data. *Id.* Finally, Sandhills offered recipients of the notice free identity theft protection services. *Id.* Sandhills allegedly sent a substantially similar notice to Ford—under her maiden name JoAnn Ray—on March 5, 2021, informing her of the breach and providing her with access to credit monitoring services (the "Notice"). [*See* ECF No. 58-1.] A few weeks after receiving the Notice—but several months after the breach occurred—an unauthorized individual applied for a $500 loan using Ford's PII. [Compl. ¶ 53.] Ford learned of the attempted fraud when Security Finance Corporation of South Carolina mailed her a notice. *Id.*

Ford filed this putative class action lawsuit on behalf of herself and other similarly situated individuals on June 18, 2021. [*See generally* Compl.] Though Ford originally filed the matter in state court, Sandhills removed the matter to this court shortly thereafter. [*See generally* ECF No. 1.] Ford asserts claims for negligence, breach of implied contract, invasion of privacy, and breach of confidence due to Sandhills' alleged failure to (1) adequately protect Ford and the class members' PII and PHI; (2) warn Ford and the class members of its allegedly inadequate information security practice; and (3) avoid sharing Ford and the class members' PII and PHI without adequate safeguards. [*See generally* Compl.] Ford alleges she incurred out-of-pocket costs associated with curing the fraudulent activity on her accounts, and suffered anxiety,

emotional distress, loss of privacy, and other economic and non-economic losses resulting from the identity theft.  *See generally id.*

After a protracted battle over whether Sandhills was the appropriate defendant,[1] Sandhills moved to dismiss Ford's complaint in its entirety on various grounds.  [*See* ECF No. 55.]  Ford opposed Sandhills' motion, *see* ECF No. 58, and Sandhills replied in further support of its motion. [*See* ECF No. 58; ECF No. 62.]

The motion is fully briefed and ripe for resolution by the court.

## DISCUSSION

The court addresses Sandhills' grounds for dismissal in turn below.

## I.    Standing

Sandhills mounts both a facial and factual challenge to Ford's standing under Article III. On the one hand, Sandhills argues Ford has not plausibly pled any injury-in-fact that is fairly traceable to Sandhills' alleged conduct.  On the other, Sandhills argues Ford's jurisdictional allegations are not true because there is no evidence that Ford was a patient of Sandhills.  Having thoroughly considered the parties' arguments, the pleadings, the record, and the applicable case law, the court disagrees with Sandhills and finds Ford has sufficiently alleged and demonstrated Article III standing.

---

[1] Sandhills moved to substitute the United States as the proper defendant in its place or, alternatively, dismiss Ford's claims based on official immunity.  [*See* ECF No. 22.]  The court granted the motion and, after substituting the United States, granted the United States' unopposed motion to dismiss Ford's claims.  [*See* ECF Nos. 34, 37.]  The Fourth Circuit later vacated the court's decision and remanded the matter for further proceedings.  [*See* ECF No. 44.]  Sandhills petitioned the Supreme Court of the United States for a writ of certiorari to review the court's decision.  The petition is pending at this time.

### A.    Standing, Generally

Federal courts are only permitted to hear "cases and controversies" pursuant to Article III of the Constitution. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). A "case or controversy" is a dispute that is "definite and concrete, touching the legal relations of the parties having adverse legal interests." *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 913 F.3d 165, 167 (4th Cir. 1990) (internal citations omitted). The controversy must be "real and substantial" as opposed to "an opinion advising what the law *would* be upon a hypothetical set of facts." *Id.* (emphasis added). Such an opinion would constitute an advisory opinion, and the Supreme Court has stated in no uncertain terms that federal courts *cannot* issue advisory opinions. *See TransUnion, LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (To the point: "federal courts do not issue advisory opinions.") So, federal courts "do not adjudicate hypothetical or abstract disputes" and "do not possess a roving commission to publicly opine on every legal question." *Id.*

Standing is an "essential" element to establishing a case or controversy exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff bears the burden of establishing standing to sue and, to do so, must show (1) they have suffered an injury in fact that is "concrete and particularized and actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable" to the defendant's challenged actions; and (3) it is *likely*—not merely speculative—a favorable decision will redress the injury. *Lane v. Holder*, 703 F.3d 668, 671 (4th Cir. 2012) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). To establish an injury-in-fact, the plaintiff must show she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016). While a threatened injury *can* confer Article III standing, not all threatened injuries *will* constitute an

4

injury-in-fact.  *See Beck*, 848 F.3d at 271.  Instead, the injury-in-fact "must be concrete in both a qualitative and temporal sense."  *Id.* (quoting *Whitmire v. Arkansas*, 495 U.S. 149, 155 (1990)). And the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact . . . .'"  *Clapper v. Amnesty Intern. USA,* 568 U.S. 398, 409 (2013) (internal citations omitted).  So, allegations "of *possible* future injury" are not sufficient to constitute standing.  *Id.*  This is particularly true where the possible future injury "relies on a highly attenuated chain of possibilities."  *See id.* at 410 (rejecting theory of standing that relied on a highly attenuated chain of circumstances).

A plaintiff must also demonstrate the injury-in-fact is "fairly traceable" to the defendant's challenged actions.  *See Lane*, 703 F.3d at 671.

### B.     Facial Challenge

Sandhills first mounts a facial challenge to Ford's standing; that is, Sandhills argues Ford's complaint "simply fails to allege facts upon which subject matter jurisdiction can be based."  *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  On a facial challenge, "the plaintiff, in effect, is afforded the same procedural protection as [s]he would receive under a Rule 12(b)(6) consideration."  *Id.*  So, the court takes Ford's factual allegations as true and must deny Sandhills' motion if Ford alleges sufficient facts to invoke subject matter jurisdiction.  *See id.*  And, as the Fourth Circuit notes, "when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous."  *Id.* at 193 (citing *Bell v. Hood*, 327 U.S. 678 (1946)).  This court must also "construe the complaint in favor of the complaining party" on a facial challenge to standing.  *See Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir.

5

2018).  So, the question before the court is this: has Ford plausibly alleged she has suffered an injury-in-fact that is fairly traceable to Sandhills' alleged conduct?

### 1.      Injury-in-fact

First, injury-in-fact.  Sandhills argues Ford has not plausibly alleged an injury-in-fact because she "essentially seeks damages for threatened future losses and emotional harm."  [*See* ECF No. 55 at 11.]  The court disagrees.  The Fourth Circuit examined standing under similar circumstances in recent years.  *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017), which was before the Fourth Circuit on two consolidated appeals, involved the alleged theft or disappearance of patients' personal information from a medical center.  In the first incident, an unidentified individual stole a laptop containing thousands of patients' unencrypted personal information, including names, birth dates, the last four digits of Social Security numbers, and personal descriptors.  The laptop was never recovered, and an internal investigation determined the laptop was likely solen and the medical center failed to follow its policies and procedures for storing patient information in a non-encrypted laptop.  A little over a year later, the facility discovered four boxes of pathology reports containing patients' identifying information—including names, social security numbers, and medical diagnoses—were missing.  Like the laptop, the boxes were never recovered.  The putative victims of both instances argued they had Article III standing based on their increased risk of future identity theft and the cost of measures to protect against that theft.

The district court dismissed both cases for lack of standing, and the Fourth Circuit affirmed the district court's rulings.  Though both sets of plaintiffs contended they faced an enhanced risk of future identity theft, the Fourth Circuit deemed these concerns "too speculative."  *Beck*, 848 F.3d at 274.  This was true even though both sets of plaintiffs alleged the laptop and documents containing their personal information were stolen; the Fourth Circuit concluded "the mere theft of

these items, without more, cannot confer Article III standing." *Id.* at 275.  To find for plaintiffs, the court would have to "assume that the thief targeted the stolen items for the personal information they contained . . . then select, from thousands of others, the personal information of the named plaintiffs and attempt successfully to use that information to steal their identities."  In the Fourth Circuit's view, this series of possibilities was too like the "attenuated chain of possibilities" the Supreme Court previously rejected.  The plaintiffs' costs of preventative measures did not confer standing, either: those alleged, "self-imposed" harms were insufficient because plaintiffs incurred those costs "in response to a speculative threat."  *Id.* at 266 (internal citation omitted).

The Fourth Circuit again took up the issue in *Hutton v. National Board of Examiners in Optometry, Inc.*, 892 F.3d 613 (4th Cir. 2018).  In those consolidated appeals, three optometrists sued the National Board of Examiners in Optometry, Inc. ("NBEO") after unknown individuals fraudulently opened credit card accounts in the optometrists' names.  *Id.* at 616.  The accounts were opened using correct social security numbers and dates of births and, in some cases, the optometrists' maiden names or former married names.  *Id.* at 616, 622.  The optometrists discussed the fraudulent accounts among themselves and identified several organizations to which they provided some of their information: the NBEO and a few other organizations.  *Id.* at 617.  But the other organizations either did not collect social security numbers or did not have databases that were breached.  *Id.*  So, the optometrists determined the *only* possible source among them to which they had given their personal information—social security numbers, names, dates of birth, addresses, and credit card information—was the NBEO.  *Id.*

The district court, relying on *Beck*, concluded the optometrists did not have standing.  And, on appeal, the Fourth Circuit reiterated "that a mere compromise of personal information, without more, fails to satisfy the injury-in-fact element in the absence of an identity theft."  *Id.* at 621.  But

this time the Fourth Circuit disagreed with the district court, concluding the *Hutton* plaintiffs plausibly alleged an injury-in-fact that was traceable to NBEO's alleged conduct. Unlike *Beck*, the *Hutton* plaintiffs alleged their data was "stolen, accessed, *and used* in a fraudulent manner." *Id.* at *622 (emphasis added). Specifically, the *Hutton* plaintiffs were "concretely injured by the data breach because the fraudsters used—and attempted to use—the Plaintiffs' personal information to open Chase Amazon Visa credit card accounts without their knowledge or approval." *Id.* There was thus no need to speculate whether those plaintiffs would suffer substantial harm. And since a substantial risk of harm *actually* existed, the Fourth Circuit found the costs the plaintiffs incurred to safeguard against future identity theft "support[ed] the other allegations and together readily show[ed] sufficient injury-in-fact to satisfy the first element of the standing to sue analysis." *Id.* at 622.

Turning back to the instant case, the court concludes Ford has plausibly alleged she suffered an injury-in-fact that is sufficiently concrete and particularized. Unlike the *Beck* plaintiffs, Ford here alleges her personal information was *actually used* in a fraudulent manner. Specifically, she alleges "an unknown and unauthorized individual, using [her] personally identifiable information, applied for a $500 loan with Security Finance Corporation of South Carolina . . . ." [Compl. ¶ 54.] That Ford does not allege the fraudster *successfully* used her personally identifying information is beside the point. As the Fourth Circuit noted in *Hutton*, "the Supreme Court long ago made clear that '[i]n interpreting injury in fact . . . standing [is] not confined to those who [can] show economic harm." *Hutton*, 892 F.3d at 622. Ford here has alleged actual misuse of her personally identifying information. So, she has sufficiently alleged she suffered an injury-in-fact that is concrete and particularized. The court thus turns to its second

question: whether Ford has plausibly alleged that injury-in-fact is fairly traceable to Sandhills' alleged conduct.

### 2. Traceability

The "fairly traceable" requirement "ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (citing *Lujan*, 504 U.S. at 560). A plaintiff does not need to "show to a scientific certainty that defendant . . . caused the precise harm suffered" to satisfy the traceability requirement. *Id.* Nor is the traceability requirement equivalent to tort causation. *Id.* But the traceability requirement *does* require "something more than an ingenious academic exercise in the conceivable." *Hutton v. National Board of Examiners in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018).

The Fourth Circuit also considered this requirement in *Hutton*. The court there found the *Hutton* plaintiffs' allegations "demonstrate[ed] that it is both plausible and likely that a breach of the NBEO's database resulted in the fraudulent use of the Plaintiffs' personal information, resulting in their receipt of unsolicited Chase Amazon Visa credit cards." *Id.* at 623. Specifically, the plaintiffs alleged: (1) that a group of optometrists from around the country noticed fraudulent accounts were being opened in their names in July and August 2016; (2) that one plaintiff's credit card was applied for in her former married name, which she provided to the NBEO several years previously; (3) another plaintiff learned of an effort to open a fraudulent account in her name using information she previously provided to the NBEO; (4) all plaintiffs alleged the NBEO was the *only* common source that collected and continued to store the social security numbers that were required to open the accounts, as well as outdated personal information, such as maiden names and married names, during the relevant period; and (5) other national optometry organizations did not gather

9

or store social security numbers or confirmed their databases were not breached. *Id.* The court thus found the *Hutton* plaintiffs plausibly alleged they had Article III standing and reversed the district court.

To be sure, Ford's complaint lacks the breadth of factual allegations the Fourth Circuit found supported the *Hutton* plaintiffs' contention that the fraud they experienced was the result of a breach of the NBEO's database. But the court considers Sandhills' facial challenge to Ford's standing under a Rule 12(b)(6) standard. So, accepting Ford's factual allegations as true and drawing all reasonable inferences in Ford's favor, the court disagrees with Sandhills and concludes Ford has sufficiently alleged her injury-in-fact is fairly traceable to Sandhills' alleged conduct. Ford here alleges she was a patient at Sandhills' Lugoff, South Carolina, facility from 2018 to 2019 and that Sandhills collected Ford's PII and PHI. [*See* Compl. ¶¶ 28, 51.] Ford received the Notice from Sandhills in March 2021 and, at some point after the Data Breach but before April 2, 2021, Ford learned that an unauthorized individually fraudulently used Ford's personally identifying information to attempt to apply for a $500 loan. *Id.* ¶ 53. Finally, Ford alleges she has not ever knowingly transmitted unencrypted sensitive PII or PHI over the internet or another unsecured source. *Id.* ¶ 55. Accepting these allegations as true and construing all reasonable inferences derived therefrom in Ford's favor—as the court must do on a facial challenge to standing—the court concludes Ford has satisfied her burden at this stage of the proceedings and sufficiently alleged the fraudulent attempt to take out a loan is a result of the Data Breach. It may very well be that discovery reveals this is not in fact the case and that the unidentified fraudster received Ford's personal information through some other source. In that case, Sandhills is free to raise these arguments again. For now, however, the court is satisfied that Ford has plausibly

alleged she suffered an injury-in-fact that is fairly traceable to Sandhills' alleged conduct. Sandhills' facial challenge to Ford's standing fails.

C.     **Factual Challenge**

Sandhills next mounts a factual challenge to Ford's standing: "that the jurisdictional allegations of the complaint [are] not true." *Kerns*, 585 F.3d at 192.  The plaintiff is "afforded less procedural protection" on a facial challenge: since the defendant "challenges the factual predicate of subject matter jurisdiction," the trial court may "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations . . . ." *Id.* (internal citation omitted).  There, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.*  The Fourth Circuit has advised district courts to exercise caution where "the jurisdictional facts are intertwined with the facts central to the merits of the dispute." *Id.* (internal citation omitted).  In those cases, "the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues" and "resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Id.* at 192–93.

Class plaintiffs cannot establish standing if the named plaintiff does not sufficiently allege she was harmed by the defendant.  *See Hutton*, 892 F.3d at 620 (citing *Beck*, 848 F.3d at 269).  This forms the basis of Sandhills' facial attack to Ford's standing.  Sandhills "scoured its data and has found no record of Ms. Ford as a patient at the time of the breach or at any time."  [ECF No. 55 at 14 (citing ECF No. 55-1, Collins Decl. ¶ 9.]  In Sandhills' view, then, Ford cannot have standing since she was never its patient.  [*See* ECF No. 55 at 14–15.]  And if Ford does not have standing, the class she purports to represent does not either.  *Id.*  In response, Ford attached a copy

of the Notice addressed to her under her maiden name of "JoAnn Ray." [*See* ECF No. 58 at 12; ECF No. 58-1.] Ford also submitted a letter from her counsel addressed to "JoAnn Ford" at the same address identified on the Notice mailed to JoAnn Ray. [*See* ECF No. 58-2.] She thus counters she is a member of the class she purports to represents and, therefore, Sandhills' factual challenge fails. Sandhills did not address Ford's argument or meaningfully dispute Ford's representation that "JoAnn Ray" is her maiden name in its reply. [*See generally* ECF No. 62.] Nor does it indicate whether its records contain any reference to a "JoAnn Ray." *See generally id.* The court agrees with Ford. Sandhills' factual challenge is based on its belief that Ford was not a patient of Sandhills because it does not have any record of a "JoAnn Ford." Ford has submitted evidence that she received a Notice under her maiden name, JoAnn Ray. Sandhills does not suggest there is no record of a "JoAnn Ray" in its system. Its factual challenge thus fails.

For these reasons, the court concludes Ford plausibly alleges she has Article III standing and Sandhills has not demonstrated those allegations are incorrect. As noted above, Sandhills is free to renew its standing challenges. At this juncture, though, the court denies Sandhills' motion to dismiss Ford's claims.

## II. Motion to Dismiss Class Allegations

Sandhills next moves to dismiss Ford's class allegations on several grounds: (1) Ford is not a member of the putative class she purports to represent; (2) Ford has not articulated an injury-in-fact sufficient to confer standing; and (3) her "attempt to create an individual injury also belies class certification." Again, the court disagrees.

First, Ford seeks to certify a class consisting of "[a]ll individuals residing in the United States whose PII or PHI was exposed to an unauthorized party as a result of the Data Breach." Compl. ¶ 62. Ford repeatedly alleges her PII and/or PHI was exposed to an unauthorized party

because of the Data Breach. *See, e.g.*, *id.* ¶¶ 5, 24, 44, 57, 59. Accepting those allegations as true, as the court must do at this point, Ford alleges she is a member of the class she seeks to represent. And, for the reasons discussed above, Sandhills did not mount a successful factual challenge to those allegations. Based on the pleadings and the record currently before the court, then, Ford is a member of the class she seeks to represent.

Next, as discussed above, the court concludes Ford has alleged an injury-in-fact that is sufficiently concrete to survive Sandhills' facial challenge.

Finally, the court declines to make any determination as to whether Ford's claims are too individualized for certification of a class. Sandhills is correct that courts have declined to certify classes where claims required individualized inquiries into each class member's claims. *See, e.g.*, *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) (finding putative class members' claims for certain damages were inherently individualized and thus not appropriate for class certification); *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (declining to certify class where each claim depended on each individual's particular interactions with the defendant, which varied from class member to class member). But those courts have done so on a class certification record. The court has a significantly more limited record here, and Sandhills does not articulate *why* the claims are too individualized for class certification. In the interest of judicial economy, then, the court declines to make any determination of the appropriateness of class certification until the parties brief those issues more fully at class certification.

For these reasons, the court denies Sandhill's motion to dismiss the class action complaint or strike Ford's class allegations.

### III.     Motion to Dismiss – Rule 12(b)(6), FRCP

Ford asserts four claims against Sandhills on behalf of herself and the class: (1) negligence; (2) breach of implied contract; (3) invasion of privacy; and (4) breach of confidence.  *See generally* Compl. ¶¶ 77–144.  Sandhills moves to dismiss each of these claims under Rule 12(b)(6), FRCP, arguing Ford has not stated a claim upon which relief can be granted.  The court considers these claims in turn below.[2]

#### A.     Legal Standard

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint[.]" *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly* at 556.)  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

In reviewing the complaint, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ashcroft*, 556 U.S. at 662 ("When there are well-pleaded factual allegations, a court should assume their veracity and

---

[2] Sandhills argues the laws of multiple states may apply to Ford's claims.  [*See* ECF No. 55 at 17–18.]  Sandhills then goes on to analyze all Ford's claims under South Carolina law, as does Ford. Given the parties' reliance on South Carolina law, the court too considers Ford's claims under South Carolina law.

then determine whether they plausibly give rise to an entitlement to relief.").    But mere "[t]hreadbare recitals of the elements of a cause of actions, supported by mere conclusory statements, do not suffice."  *Ashcroft*, 556 U.S. at 678.  Indeed, though the court must accept all factual allegations as true, the court "[is] not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (citing *Twombly* at 555 (internal quotation marks omitted).)  And the court must "put aside any 'naked assertions devoid of further factual enhancement.'"  *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (citing *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014)).

### B.    Negligence

Ford first asserts a negligence claim against Sandhills.  A plaintiff pressing a negligence claim under South Carolina law must demonstrate (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty by negligent act or omissions; (3) the negligent act or omission resulted in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty.  *See In re Blackbaud*, 567 F. Supp. 3d 667, 679 (D.S.C. 2021) (internal citation omitted).  Ford here seeks to hold Sandhills liable for failing to protect her from the criminal acts of third parties.  South Carolina generally does not recognize any affirmative duty to control another's conduct or warn a third person or potential victim of danger.  *Id.* at 681 (citing *Faile v. S.C. Dep't of Juv. Just.*, 566 S.E.2d 536, 546 (2002)).  It does, however, recognize five exceptions to the general rule: "(1) where the defendant has a special relationship to the victim; (2) where the defendant has a special relationship to the injurer; (3) where the defendant voluntarily undertakes a duty; (4) where the defendant negligently or intentionally creates the risk; and (5) where a statute imposes a duty on the defendant."  *Id.*

Ford contends the fourth exception applies here.  In her view, Sandhills' failure to properly safeguard its patients' records and PII left the information vulnerable to an easily foreseeable event: the Data Breach.  [*See* ECF No. 58 at 18–22.]  Sandhills disagrees, arguing Ford has not pled any facts indicating what Sandhills did or did not do that resulted in the Data Breach.  [*See* ECF No. 55 at 19.]  The court disagrees.  Ford alleges *Sandhills* "acquired, collected, and stored" Ford and the class's PII and PHI" and that Sandhills could have prevented the Data Breach "by properly securing and encrypting the PII and PHI or "destroy[ing] the data . . . ."  Compl. ¶¶ 28, 32.  Ford further alleges Sandhills failed to properly secure and encrypt the PII and PHI "[d]espite the prevalence of public announcements of data breach and data security compromises . . . ."  *Id.* ¶ 34.  Construing these allegations in the light most favorable to Ford, the court is satisfied that, at this early stage in the proceedings, Ford has sufficiently alleged Sandhills negligently created the risk of the Data Breach by failing to properly secure and encrypt the information.  The court notes Sandhills' repeated objection that Netgain was responsible for maintaining the information breached.  Again, discovery may very well prove that to be true.  But that  argument  is better assessed once discovery provides further clarity.

Ford has also sufficiently alleged Sandhills' failure to appropriately safeguard the PII proximately caused her injuries and that she suffered damages.  As noted above, Ford alleges actual misuse of her information in the form of an attempt by an unknown individual to apply for a loan using her PII no later than several months after the data breach occurred.  *Id.* ¶ 53.  Ford also alleges she suffered actual damages in the form of damage to and diminution of the value of her PII; lost time; and out-of-pocket costs associated with preventing, detecting, and recovering from identity theft.  *Id.* ¶¶ 57–58, 108.  These allegations are sufficient at the pleading stage to plausibly

state a claim for negligence.  The court thus denies Sandhills' motion to dismiss Ford's negligence claim.

### C.     Implied Contract

The court next considers Ford's claim for breach of an implied contract.  Ford  alleges she and the class provided and entrusted  personal information to Sandhills as a condition of being its patient and, "[i]n doing so . . . entered into implied contracts with [Sandhills] by which [Sandhills] agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify [Ford] and the Nationwide Class if their data had been breached and compromised or stolen." Compl. ¶ 114.  According to Ford, Sandhills breached these implied contracts by failing to safeguard and protect their personal information and by failing to provide them timely and accurate notice that their personal information was compromised because of the data breach.  *Id.* ¶ 115.  Sandhills argues this claim fails because Ford has not pled any facts suggesting the parties had a meeting of the minds concerning data storage, so the claim fails. The court disagrees.

"A contract is an obligation which arises from actual agreement of the parties manifested by words, oral and written, or by conduct." *J.R. v. Walgreens Boots Alliance, Inc.*, 470 F. Supp. 3d 534, 558 (D.S.C. 2020) (quoting *Stanley Smith & Sons v. Limestone Coll.*, 332 S.E.2d 474, 477 (SC Ct. App. 1984)).  An implied contract is one manifested by conduct.  *Id.*  Like an express contract, an implied contract "rests on an *actual agreement* of the parties to be bound to a particular undertaking."  *Id.* (emphasis added).  So, the parties "must manifest their mutual assent *to all essential terms of the contract* in order for an enforceable obligation to exist."  *Id.* (emphasis added).

17

Ford has not alleged the parties each agreed to be bound to any particular undertaking. Neither has she alleged Sandhills manifested its assent to safeguard Ford and the class's personal information. But this motion is before the court pursuant to Rule 12(b)(6), and the court must "view the complaint in the light most favorable to the plaintiff." *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). Ford *has* alleged the parties entered into the implied contract by virtue of Ford and the class entrusting Sandhills with their personal information. The reasonable inference from that allegation is that Sandhills agreed to take reasonable measures to safeguard Ford and the class's personal information when it received the personal information. For this reason and considering Sandhills' burden on a Rule 12(b)(6) motion, Ford has sufficiently pled a claim for breach of implied contract.

### D.    Invasion of Privacy and Breach of Confidence

The court turns to Ford's final claim for invasion of privacy and breach of confidence. Sandhills argues Ford fails to state a claim under either theory.

#### 1.    Invasion of Privacy

South Carolina recognizes three privacy-based claims: (1) wrongful appropriation of personality; (2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs. *Slaon v. S.C. Dep't of Pub. Safety*, 586 S.E.2d 108, 110 (S.C. 2003). Though Ford does not identify which theory she seeks to recover under in her opposition brief, she states her claim is one for wrongful intrusion into private affairs. Sandhills argues Ford's claim fails because she does not allege publicity. Ford counters she need not allege publicity because her claim is for wrongful *intrusion* into private affairs. This is because, she argues, publicity is not a required element of a claim for wrongful intrusion into private affairs. On review of the pertinent case law,

the court is constrained to agree with Ford: it does not appear publicity is a required element of a claim for wrongful intrusion into private affairs.

The thrust of Sandhills' position is derived from the Supreme Court of South Carolina's statement:  "Encompassed in [the] three recognized torts is the infringement on the right of publicity; it is denominated wrongful appropriation of personality.  It addresses the plaintiff's right to the commercial protection of his name, likeness, or identity."  *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 684 S.E.2d 756 (S.C. 2009).  That court noted "the gist of" an action for wrongful *appropriation of personality* "is the violation of the plaintiff's exclusive right at common law *to publicize* and profit from his name, likeness, and other aspects of personal identity."  *Id.* (citing *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E.2d 2 (S.C. Ct. App. 1989) (emphasis added)).  Likewise, that court identified "the gravamen of the tort" of wrongful *publicizing* of private affairs as "publicity as opposed to mere publication."  *Snakenberg*, 383 S.E.2d at 6.  Our sister courts have thus rejected claims for wrongful appropriation of personality and wrongful publicizing of private affairs where the plaintiff failed to allege publicity.  *See, e.g.*, *J.R.*, 470 F. Supp. 3d at 550–53 (dismissing claims where plaintiffs did not plead the defendant publicized their personally identifying information).  But Sandhills has not pointed the court to, and it cannot find, any authority suggesting that the gravamen of a claim for wrongful *intrusion* into private affairs is, like the other two torts, publicity, such that publicity is an essential element of the tort.  Indeed, the South Carolina Court of Appeals has noted its "elements differ significantly" from the other two torts.  *Snakenberg*, 383 S.E.2d at 6.  Ford, on the other hand, notes that our sister courts have rejected the notion that publicity is an essential element of a wrongful intrusion claim.  *See Williams v. Bank of Am., Nat Ass'n*, 2015 WL 3843251, at *6 (D.S.C. June 19, 2015).  Instead, courts in this district as well as South Carolina courts require only that a plaintiff plead the

following elements: (1) an intrusion, which consists of watching, spying, prying, besetting, overhearing, or other like conduct; (2) into that which is private; (3) substantial and unreasonable enough to be legally cognizable; and (4) intentional. *See Park v. Southeast Service Corp.*, 771 F. Supp. 2d 588, 591 (D.S.C. 2011); *Snakenberg*, 383 S.E.2d at 6.

Sandhills does not contend Ford has not sufficiently pled those elements. Instead, Sandhills moves to dismiss Ford's claim solely because she has not pled that Sandhills publicized her PII. For the reasons above, the court disagrees that Ford is required to do so. The court thus denies Sandhills' motion to dismiss Ford's claim for wrongful intrusion into private affairs.

### 2.     Breach of Confidence

Next, Sandhills moves to dismiss Ford's claim for breach of confidence on the grounds South Carolina law has not recognized a claim in this context, and, in any event, Ford does not allege her PHI was used in any way by unauthorized third parties. Ford counters that Sandhills "disclosed [her] PHI in a circumstance in which it was required to hold that information in confidence." [ECF No. 58 at 26.] The court agrees with Sandhills. Put simply, a review of Ford's allegations—even construed in the light most in her favor—does not reveal any allegation suggesting Sandhills disclosed her PHI. Both the sample notice of data breach and the Notice Ford received state "patient medical records, lab results, medications, credit card numbers, and bank accounts" were not affected. [*See* Compl. ¶ 23; ECF No. 58-1.] And the sole factual allegation suggesting any of Ford's data was fraudulently accessed concerns Ford's PII, *not* her PHI. *See* Compl. ¶ 53. Ford has not plausibly alleged Sandhills disclosed her PHI in a manner constituting a breach of confidence. So, the court dismisses Ford's fourth claim for breach of confidence.

## IV.    Motion to Dismiss – Rule 12(b)(7), FRCP

The court turns next to Sandhills' final ground for dismissal: Ford's failure to join Netgain as a party.  Having thoroughly considered the parties' arguments and the pertinent law, the court denies Sandhills' motion.

A party defendant may move to dismiss a plaintiff's claims under Rule 12(b)(7) if the plaintiff fails to join a party under Rule 19, FRCP.  Fed. R. Civ. P. 12(b)(7).  Rule 19 requires the court to join as a party any "person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" if: (1) the court cannot accord complete relief among the existing parties in that person's absence; or (2) the person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may impair or impede the person's ability to protect the interest or leave an existing party subject to a substantial risk of incurring double, multiple, or inconsistent obligations because of the interest. Fed. R. Civ. P. 19(a)(1)(A)-(B).  As the moving party, Sandhills must demonstrate the absent party—Netgain—is necessary and indispensable under Rule 19.  *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).  If the party is considered "necessary" under Rule 19(a), the court must then determine whether the party is indispensable under Rule 19(b).  *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000).

As Sandhills acknowledges, joint tortfeasors generally are not considered necessary or indispensable parties in the Fourth Circuit.  *See Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).  Sandhills nonetheless argues Netgain is a necessary party because Netgain is the entity that maintained and stored Ford and the class's PII.  Sandhills also argues it cannot achieve complete relief if Netgain is not, and, to the extent Sandhills can raise claims against Netgain, those claims could be subject to litigation in different forums.

21

First, the court disagrees that complete resolution of Ford's claims requires Netgain to be joined as a party. The thrust of Sandhills' argument here is that any counterclaim or crossclaim it could potentially assert depends on Netgain's involvement in the case. Indeed, it notes at least one other court in this circuit has ordered the joinder of a party under similar circumstances. *See R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 500 (D. Md. 2007). But this prong of Rule 19 focuses on relief "*as between the persons already parties*, not between a party and the absent person whose joinder is sought[.]" *U.S. v. Arlington County, VA*, 669 F.2d 925, 929 (4th Cir. 1982) (emphasis added). To Sandhills' credit, Ford *does* reference Netgain (as the unidentified third-party vendor) throughout her complaint. And her complaint is, as Sandhills argues, "rife with the conduct of the entity storing [Ford's] PII." [ECF No. 62 at 4.] But Ford's complaint is also rife with allegations that *Sandhills*' actions and inactions led to the Data Breach. As noted above, discovery may yet reveal that Sandhills is not responsible for the Data Breach or Ford's alleged injuries. Netgain may be responsible for all or part of Ford's injuries. But, as our sister court recently noted, Netgain need not be joined in this action for Sandhills to mount that defense. *See Weatherford v. E.I. Dupont de Neumours & Company*, Case No. 4:22-cv-01427-RBH, 2023 WL 11015357, at *10 (D.S.C. Sept. 27, 2023) (noting the joinder of absent parties was not necessary for the defendant to develop such a defense). And Sandhills does not explain why Netgain must be joined as a party for it to mount any counterclaim against Ford. Moreover, Sandhills is free to assert its own claims against Netgain in a separate action.

Next, Sandhills does not meaningfully argue Netgain's absence from this matter will subject it to inconsistent obligations. Instead, it argues Netgain's absence will "hamstring the jury's effort to allocate fault among all potentially responsible parties" and bringing a separate action against Netgain for indemnification or contribution "would result in needlessly duplicative

suits." [ECF No. 62 at 5–6.] In the first instance, the court's inquiry is focused on whether complete relief can be afforded as to Ford and Sandhills against *each other*. Netgain need not be a defendant in the action for a jury to potentially find Sandhills is only liable for some of Ford's injuries, or none at all. And while the court is sympathetic to Sandhills' reluctance to subject itself to duplicative litigation, Sandhills does explain *why* duplicative litigation would lead to a risk of inconsistent judgments.

For these reasons, Sandhills has not satisfied its burden of demonstrating Netgain is a necessary party under Rule 19. The court thus denies Sandhills' motion under Rule 12(b)(7).

## CONCLUSION

For the reasons above, the court **GRANTS in part and DENIES in part** Sandhills' motion to dismiss, ECF No. 55. The court **GRANTS** Sandhills' motion to dismiss Ford's fourth cause of action for breach of confidence and denies the rest of Sandhills' motion. The court's denial of Ford's fourth cause of action is without prejudice.

**IT IS SO ORDERED.**

*Sherri A. Lydon*

December 20, 2024                          Sherri A. Lydon
Columbia, South Carolina                   United States District Judge